UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

--------------------------------------------------------

In re:

                                                                    BKY 17-42115-KAC

The Yoga Center, LLC,

                                                                    Chapter 11

                    Debtor.

--------------------------------------------------------

## THE YOGA CENTER, LLC'S SECOND AMENDED DISCLOSURE STATEMENT

## 1.     INTRODUCTION AND PRELIMINARY MATTERS

This Second Amended Disclosure Statement dated February 7, 2018 (the "Amended Disclosure Statement"), is submitted by The Yoga Center, LLC ("Debtor"). The Amended Disclosure Statement contains information about the Debtor and describes the Debtor's Second Amended Plan of Reorganization dated February 7, 2018 and filed by the Debtor on February 8, 2018 (the "Amended Plan").  The Debtor is seeking confirmation of the Amended Plan.  The Amended Disclosure Statement is intended to provide you with adequate information to enable you to make an informed decision on whether to vote for or against the Amended Plan.

The Debtor filed for relief under Chapter 11 of the United States Bankruptcy Code on July 13, 2017 with the intention of reorganizing its debts.  The Amended Plan is intended to implement the Debtor's reorganization of its business and finances.  The Amended Plan provides for the reorganization of the Debtor's business and the payment of the claims of creditors.   The Debtor believes that the Amended Plan complies with all of the requirements of the Bankruptcy Code and that it should be confirmed by the Court.

### Purpose of This Document

This Amended Disclosure Statement is provided to creditors to provide them with information relevant to the Amended Plan and to enable creditors to make informed decisions concerning their vote on the Amended Plan.  Parts of the Amended Plan are incorporated into this Amended Disclosure Statement, and a copy of the Amended Plan is included in this voting packet.  Capitalized terms used in this Amended Disclosure Statement shall have the meanings ascribed to them in the Amended Plan or in the

Bankruptcy Code unless the context requires otherwise.

Be sure to read the Amended Plan as well as the Amended Disclosure Statement. This Amended Disclosure Statement describes the Amended Plan, but it is the Amended Plan itself that will, if confirmed, establish your rights.

The Court has entered an order setting the date of the hearing on confirmation of the Amended Plan, and establishing the deadline for the submission of ballots casting votes for or against the Amended Plan. A copy of the order is included in the materials accompanying this Amended Disclosure Statement. You may vote for the Amended Plan by completing the enclosed ballot and mailing it to the Clerk of the United States Bankruptcy Court, 301 U. S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, in time for it to be RECEIVED not later than the date set forth in the Court's Order, a copy of which is attached. Ballots that are not submitted timely will not be counted. At the confirmation hearing the Court will determine whether a sufficient number of creditors have accepted the Amended Plan, and whether to confirm the Amended Plan.

Section 1129 (a) of the Code imposes certain conditions for the confirmation of an Amended Plan of reorganization. These conditions include the requirement that all classes of claims and interests have accepted the Amended Plan or are not impaired. Section 1129 also establishes the number and dollar amount of claims that must vote in favor of an Amended Plan in order for a class to have accepted the Amended Plan. In the event that one or more classes rejects the Amended Plan, the Bankruptcy Court may nevertheless confirm the Amended Plan if the Bankruptcy Court finds that the Amended Plan affords fair and equitable treatment to the class rejecting it. This means that, pursuant to 11 U.S.C. §1129(b), the Amended Plan may be confirmed even if a class of claims or interests rejects it so long as the Amended Plan provides that (1) each holder of a claim or interest in the rejecting class receives the value of that claim or interest; or (2) no holder of a claim or interest junior to those held by members of the rejecting class will receive or retain value under the Amended Plan. **The Debtor reserves the right to seek confirmation under 11 U.S.C. §1129(b).** (These statements are intended only to briefly summarize the requirements for confirmation that are established in § 1129. The proponent of an Amended Plan must meet all of the applicable conditions set forth in this section of the Code in order to obtain confirmation of an Amended Plan of reorganization. These statements do not address all of the applicable conditions and criteria for confirmation; and creditors are urged to consult with their counsel and advisors, and to review the applicable provisions of the Code independently.)

Debtor's Amended Disclosure Statement is furnished pursuant to § 1125 of the Bankruptcy Code and is furnished to provide all persons known to have claims against Debtor with sufficient information to permit them to make an informed judgment as to their votes on whether to accept or reject the Amended Plan. No representations

concerning the Debtor, particularly as to its future business operations, the value of its property or the value of any notes to be issued under the Amended Plan, other than those set forth in this Amended Disclosure Statement, are authorized by the Debtor.  ANY REPRESENTATION OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE WHICH ARE OTHER THAN THOSE IN THIS AMENDED DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND ANY SUCH ADDITIONAL REPRESENTATIONS OR INDUCEMENTS SHOULD BE REPORTED TO THE DEBTOR OR TO THE UNITED STATES TRUSTEE, WHO, IN TURN, SHALL DELIVER THIS INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE.

The financial information contained in this Amended Disclosure Statement has been provided by the Debtor but has not been independently reviewed or audited.  All statements concerning financial data are made in good faith and are intended to be as complete and as accurate as possible within these limitations.  Neither the Debtor nor its counsel are aware of any inaccuracies.

### Deadline for Objecting to the Confirmation of the Amended Plan

The Court Order approving this Amended Disclosure Statement sets a deadline for objections.  Objections to the confirmation of the Amended Plan must be filed with the Court and served upon Debtor's Counsel, Michael J. Sheridan, Esq., 7900 International Drive, Suite 300, Bloomington, MN 55425, and other parties in interest by the appropriate deadline and in accordance with the applicable Federal Rules of Bankruptcy Procedure and the Local Rules of the United States Bankruptcy Court for the District of Minnesota.  Generally, objections must be served and filed electronically through the CM/ECF system.

### Contact for More Information

If you want additional information about the Amended Plan, you may contact the Debtor's attorney, Michael J. Sheridan, Esq., 7900 International Drive, Suite 300, Bloomington, MN 55425; telephone: 763-229-7538; email: msheridan@atlasfirm.com.

## 2.    DEFINITIONS

The definitions set forth in the Amended Plan are used in this Amended Disclosure Statement.

## 3.    NATURE AND HISTORY OF THE DEBTOR'S BUSINESS

### A.     Description and History of the Debtor's Business

Debtor is a yoga instruction studio with annual gross revenue of $1.6 million in 2016 and annual gross revenue of $1.5 million in 2017.  The business has three revenue streams: yoga class instruction, yoga teacher education, and retail sales of clothing, equipment and décor.  In late 2016, Debtor moved into a new leased space in Minneapolis.  As a result of the funds expended on the build-out of the new space, Debtor incurred short-term loans to assist with operating expenses.  Debtor projected increased revenue from the new space and believed the increased revenue would permit Debtor to meet all debt obligations.  Shortly after moving into the new Minneapolis space, flooding from an apartment over the leased space caused water damage temporarily halting Debtor's business operation at the Minneapolis location and requiring Debtor to expend funds for water-damage repairs.  At the time of filing, Debtor operated two studio locations: St. Louis Park and Minneapolis. Debtor also had off-site leases across greater Minnesota, Wisconsin and North Dakota for temporary studio use at other yoga studios.

### B.     Insiders of the Debtor

Neil Riemer, president of the Debtor is an insider as defined in §101(31) of the United States Bankruptcy Code (the "Code"). On the date of filing, Sharvasana, LLC held a 90% ownership interest in the Debtor.  Sharvasana, LLC is wholly owned by Neil Riemer.  On the date of filing, Jennifer Gray held a 10% ownership interest in the Debtor. After the date of filing, Jennifer Gray transferred her 10% ownership interest to Neil Reimer in exchange for Jennifer Gray being released from any potential liability from the Debtor's legal obligations or involvement in the present bankruptcy case. Neil Reimer now holds 100% of the ownership interest, directly and via Sharvasana, LLC, in the Debtor. Neil Riemer was paid the following compensation by the Debtor or its affiliates during the two years prior to the commencement of the Debtor's bankruptcy case and during the pendency of this Chapter 11 case.

| Insider | Amount Paid | Dates Paid | Reason for payment |
|---------|-------------|------------|--------------------|
| Neil Riemer | $7,358.35 | July 2015 - June 2016 | Payment of Owner's insurance, vehicle lease and business travel expenses. |
| Neil Riemer | $ 109,390.41 | July 2016 - July 2017 | Payment of credit cards in Owner's name used for business expenses. |
| Neil Riemer | $30,877.04 | July 2017 - present | Salary |
| Sharmane Riemer (spouse) | $42.00 | July 2017 - present | Salary |

### C.      Management of the Debtor Before and During the Bankruptcy

During the two years prior to the date on which the bankruptcy petition was filed, the officers, directors, managers or other persons in control of the Debtor (the "Manager") was Neil Riemer. Neil Riemer continues to be the Manager of the Debtor during the Debtor's chapter 11 case.

After the effective date of the order confirming the Amended Plan, the directors, officers, and voting trustees of the Debtor, any affiliate of the Debtor participating in a joint Amended Plan with the Debtor, or successor of the Debtor under the Amended Plan (the "Post Confirmation Manager"), will be Neil Riemer.  The responsibilities and compensation of these Post Confirmation Managers are described in section 9 of this Amended Disclosure Statement.

## 4.      CIRCUMSTANCES LEADING TO THE BANKRUPTCY FILING

The new space in Minneapolis did not meet revenue projections and Debtor was unable to meet the payment terms of the short-term loans and continue to meet operating expenses.  As a condition of the short-term loans, Debtor authorized the three short-term lenders (Kings Cash Group, LLC; Can Capital Asset Servicing, Inc. & Forward Financing, LLC) to receive ACH payments directly from Debtor's operating bank account each business day and assigned a security interest in Debtor's receivables. Debtor began to default on its lease payments in order to meet payroll expenses and continue payments to the short-term lenders.

In May 2017, Debtor took steps to stop the automatic payments to the short-term lenders and began settlement discussions with each lender to attempt to increase the term of each loan and thereby reduce the amount of the recurring payments.  During this time, Debtor also began negotiating the settlement of a default under the St. Louis Park sub-lease.

In June 2017, Kings Cash Group contacted Debtor's credit card processing merchant and froze the funds being held by the merchant from purchases made in Debtor's studios.  Debtor eventually negotiated a release of a portion of the funds with Kings Cash Group.  However, the interruption to Debtor's already strained cash flow caused additional difficulty for Debtor to meet payroll and other operating expenses. As a result, Debtor began to fall behind on the negotiated settlement payments with the short-term lenders.

Fearing additional interruptions to cash flow by the short-term lenders, this case was filed before Debtor's credit card processing account could be frozen again.   The filing of this case stayed the collections of the short-term lenders.

5.    **OPERATIONS DURING THE BANKRUPTCY CASE**

During the pendency of this Chapter 11 case, Debtor has tried to maintain its business affairs in the ordinary course.  Revenue projections have not been met since the Chapter 11 case was filed.  The two most significant factors affecting revenue are the unseasonably warm weather this fall and the performance of the Minneapolis location.

Debtor's peak season typically is between the months of October and April, when the weather cools and people tend to spend less time outdoors.  The unseasonably warm fall has resulted in less classes booked and less retail sold from reduced foot traffic.  Debtor believes that revenue will return to projected numbers this winter as people look for indoor activities.  This will be especially true in January and February when people look to start new fitness routines.

Debtor will not be assuming the Minneapolis lease as the location has not met projections.  Debtor believes the reduced revenue is a result of a number of condominiums in the surrounding area offering free yoga classes to their tenants as a competitive perk to attract buyers.  The additional issue of warm weather has left Debtor unable to pay rent at the Minneapolis location.  Debtor has attempted to negotiate a temporary rent reduction with the landlord, CFLP-Velo, Inc., and proposed to focus the Minneapolis location on retail sales in order to increase revenue and minimize employee expense.  However, Debtor and CFLP-Velo, Inc. were unable to reach an agreement.  Debtor consolidated its operation to the St. Louis Park location in November 2017.  By doing so, Debtor was able to reduce overhead and payroll expenses and focus on growing business revenue at its most successful location.

### Significant Events During the Bankruptcy Case

The Debtor has prepared the monthly operating reports required by the United States Trustee and sat for the meeting of creditors required by § 341 of the Code.  The Court has approved the employment of Michael J. Sheridan, Esq. as counsel for the Debtor.  The Debtor stipulated with its senior secured creditor, Klein Bank, for the use of cash collateral and adequate protection.  The stipulation was approved by the Court.  The cash collateral was used by Debtor to meet operating expenses during a period of reduced revenue.  The Debtor moved the Court for an extension of the deadline to assume or reject leases.  The deadline has been extended to February 8, 2018.

### Projected Recovery of Avoidable Transfers

The Debtor has reviewed its records for evidence of preference payments or otherwise avoidable transfers pursuant to 11 U.S.C. § 547 and 11 U.S.C. § 548.  Payments or transfer made to creditors within the 90 days prior to filing are as follows: Klein Bank ($150,000); Kings Cash Group ($67,982); CAN Capital Asset Servicing

($16,591); Forward Financing ($22,200); and CLPF-Velo ($40,170).  Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions as potential defenses exist to such avoidance actions and Debtor does not believe protracted, potentially expensive litigation would necessarily result in a recovery for the creditors.

### Claims Objections

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld.

### Current and Historical Financial Conditions

The identity and fair market value of the estate's assets are listed in section 14. The valuation basis that was used was net book value and cost value where appropriate. The Debtor's most recent financing statements issued before bankruptcy, each of which was filed with the Court, are set forth in Exhibit B.  The first three pages of the most recent post-petition operating report filed since the commencement of the Debtor's bankruptcy case is set forth in Exhibit C.  A summary of the Debtor's periodic operating reports filed since the commencement of the Debtor's bankruptcy case is set forth below.

### Income and Expenses during the Case

The following table shows the Debtor's income and expenses during the pendency of the case.  The information set forth in the table is drawn from the Monthly Operating Reports filed with the U.S. Trustee.

|  | 7/2017* | 8/2017 | 9/2017 | 10/2017 | 11/2017 | 12/2017 | TOTAL |
|---|---|---|---|---|---|---|---|
| Income | 58,883.24 | 129,941.64 | 122,347.86 | 110,859.53 | 124,185.21 | 90,247.14 | 636,464.62 |
| Expense | 49,830.02 | 109,372.00 | 118,532.83 | 131,648.52 | 136,374.96 | 83,873.65 | 629,631.98 |
| Net | 9,053.22 | 20,569.64 | 3,815.03 | <20,788.99> | <12,189.75> | 6,373.49 | 6,832.64 |

*The case was filed on July 13, 2017, the July monthly operating report covers 7/13/17 through 7/31/17.

## 6.    SUMMARY OF THE AMENDED PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A.    What is the Purpose of the Amended Plan of Reorganization?

As required by the Code, the Amended Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Amended Plan also states whether each class of claims or equity interests is impaired or unimpaired. If

the Amended Plan is confirmed, your recovery will be limited to the amount provided by the Amended Plan. The Amended Plan is based on the premise that Debtor will be able to maintain a profitable business by consolidating to the St. Louis Park location, thereby reducing overhead and payroll.

## B.    **Unclassified Claims: Description And Treatment**

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Amended Plan. They may, however, object if, in their view, their treatment under the Amended Plan does not comply with that required by the Code. As such, the Debtor has *not* placed the following claims in any class:

(a) Priority unsecured tax claims entitled to priority pursuant to §507(a)(8) of the Bankruptcy Code include the claims of the United States Internal Revenue Service ("IRS") (to the extent allowed). For the purposes of the Amended Plan, these tax claims will include that portion of the IRS claim allowed by the court. These claims, as identified in the IRS' amended proof of claim, are estimated to be approximately $200.00, but that claim is disputed. The priority tax claim appears to be for payroll taxes due in December 2017. Debtor uses a payroll service and has made payroll distributions as required since the filing of the case. As such, the payroll taxes in the amount of $200.00 have been paid. The MN Department of Revenue has not filed a claim and Debtor does not believe any taxes are due to the MN Department of Revenue at this time. The Debtor will make such additional payments as may be necessary to assure that the tax priority claims are paid on the Effective Date or in the ordinary course of business from Debtor's operating revenues pursuant to 28 U.S.C. §1930 (a) and (b).

(b) Administrative expenses entitled to priority pursuant to §503(b)(2) or §503(a) of the Bankruptcy Code excluding any claims included in any other class under the Amended Plan. These claims include attorneys' fees for the Debtor's attorneys as may be approved and awarded by the Court pursuant to §330(a) of the Code. The Debtor estimates administrative priority claims for professional persons will be approximately $19,230 as of the date of confirmation. Allowed administrative expenses entitled to priority pursuant to §503(b)(2) of the Code shall be paid in full to the extent allowed by the Court, within 360 days from the Effective Date, from the Debtor's operating revenues, and from advance retainers paid by the Debtor to professionals.

(c) United States Trustee fees and other court costs and fees assessed, or accessible pursuant to 28 U.S.C. §1930(a) and (b). The Debtor estimates that unpaid Trustee fees, court fees, and other fees assessable pursuant to these provisions, will be less than $1,500 as of the date of confirmation. All such fees and expenses will be

paid on the Effective Date from Debtor's income.   Debtor shall continue to pay
those fees authorized and assessed or otherwise payable in accordance with 28
U.S.C. § 1930, following confirmation until such time as this Chapter 11 case is
closed, dismissed or converted. After confirmation of the Amended Plan, the
Debtor shall submit quarterly operating reports to the United States Trustee each
quarter (or portion thereof) until this Chapter 11 case is closed, dismissed or
converted.  These reports shall be in the format prescribed by the United States
Trustee.

## C.      Classified Claims: Description And Treatment

### Class 1: Priority Wage Claims pursuant to § 507(a)(4) of the Code

Class 1 consists of the priority wage claim of Nicole Vesperman.  Ms.
Vesperman is an employee of the Debtor and holds a claim of $11,793.65.  A
portion of the claim is for compensation earned by Ms. Vesperman within 180
days before the date of the filing of the petition. The Debtor estimates that the
amount of the priority wage claim is $8,587.58.  Therefore, this Amended Plan
treats Ms. Vesperman's claim as a priority claim in the amount of $8,587.58
and an unsecured non-priority claim in the amount of $3,206.07.  The priority
portion of such claim shall be paid within 360 days of the Effective Date; the
non-priority portion will be included in Class 6.  Ms. Vesperman has not filed a
claim. This claim is impaired.

### Class 2: Priority Pre-payment Claims pursuant to § 507(a)(7) of the Code

Class 2 claims consists of all priority unsecured claims whose claims are due to
refunds for services paid for but not received, pursuant to Minn. Stat.§
136A.827(6).  To the extent that Debtor provides yoga instructor courses for
profit, it is a "private career school" as defined by Minn. Stat. § 136A.821(5).
A number of students that had applied for Debtor's instructional courses, had
elected to cancel their contract or otherwise were entitled to a refund as of the
date of filing because Debtor did not provide the services for which the student
had bargained.  Under Minnesota state law, a private career school . . . shall
refund to the student any amounts due and arrange for termination of the
student's obligation to pay any sum in excess of that due under the cancellation
and refund policy.  See Minn. Stat.§ 136A.827(6).  Debtor shall pay to the
Class 2 priority unsecured creditors $9,019.49 within 360 days of the Effective
Date of the Amended Plan from Debtor's operating revenue.  At present, and
based upon filed and scheduled claims as of the date of this Amended Plan,
Debtor estimates that the total amount of the claims in this class is
approximately $9,019.49 and that no one party in Class 2 has a claim above
$2,850.  This class is impaired.

9

**Class 3: Secured Claim – Klein Bank**

Class 3 consists of the allowed secured claim of Klein Bank. Klein Bank holds a $150,894.78 secured claim secured against substantially all of Debtor's assets, which were valued at $157,784.63 as of the commencement of the case. Klein Bank holds a senior lien as its lien was perfected prior to the liens of Debtor's other secured creditors by the filing of a financing statement with the Secretary of State of the State of Minnesota on October 27, 2014. Pursuant to Order of this Court dated October 17, 2017 and a stipulation between Debtor and Klein Bank dated August 29, 2017, Debtor continued to use the cash-collateral for business operation in exchange for providing Klein Bank adequate protection by granting Klein Bank replacement liens in all post-petition assets of Debtor having the same nature, type, quality and substance of the pre-petition collateral, excluding any causes of action Debtor may have under Chapter 5 of United States Bankruptcy Code. Debtor provided additional adequate protection by stipulating to interest only payments to Klein Bank payable September – December 2017. Klein Bank's secured claim is $150,894.78 (Claim 14). This claim is impaired.

The Debtor will pay the Class 3 Secured Debt on a 5-year amortization at 5.5%, in monthly installments of $2,871.00 beginning the 20th day of the first month following the Effective Date of the Amended Plan, for a term of 60 months. Upon payment in full, the secured creditor will release its lien.

**Class 4: Secured Claim – Can Capital Asset Servicing, Inc.**

Class 4 consists of the allowed partially secured claim of Can Capital Asset Servicing, Inc. Can Capital Asset Serving, Inc. holds a $62,000 claim partially secured against substantially all of Debtor's assets. Can Capital Asset Serving, Inc's lien was perfected after Klein Bank's lien but prior to the liens of Debtor's other secured creditors[1] by the filing of a financing statement with the Secretary of State of the State of Minnesota on October 31, 2016. All of the collateral, except $6,889.85, that secures Can Capital Asset Serving, Inc's claim is encumbered by the perfected senior lien of Klein Bank. Therefore, this Amended Plan treats any secured claim that Can Capital Asset Serving, Inc. may claim as unsecured in the amount of $55,110.15. The unsecured amount of Can Capital Asset Serving, Inc's claim shall be treated as unsecured, non-priority claim. Can Capital Asset Serving, Inc. has not filed a claim. This claim is impaired.

---

[1] The financing statement of Pawnee Leasing Corporation was filed prior to the financing statement of Can Capital Asset Serving, Inc. However, the Pawnee Leasing Corporation lien extends only to the signs Debtor purchased from the creditor.

The Debtor will pay the Class 4 Secured Debt on a 5-year amortization at 5.5%, in monthly installments of $143.00 beginning the 20th day of the first month following the effective date of the Amended Plan, for a term of 60 months. Upon payment in full, the secured creditor will release its lien.

### Class 5: Secured Claim – Pawnee Leasing Corporation

A. Pawnee Leasing Corporation holds a $23,465.30 claim partially secured against the exterior building signs Debtor purchased from the creditor. Pawnee Leasing Corporation's lien was perfected after Klein Bank's lien but prior to the liens of Debtor's other secured creditors by the filing of a financing statement with the Secretary of State of the State of Minnesota on September 23, 2016. However, Pawnee Leasing Corporation's lien only extends to the signs that Debtor purchased from the creditor. Debtor estimates the value of the signs at $292.00. Debtor intends to surrender the signs to Pawnee Leasing Corporation upon confirmation of this Amended Plan in order to extinguish Pawnee Leasing Corporation's secured claim. Therefore, this Amended Plan disregards any secured claim that Pawnee Leasing Corporation may claim. Any deficiency on Pawnee Leasing Corporation's claim shall be treated as unsecured, non-priority claim. Pawnee Leasing Corporation has not filed a claim. This claim is impaired.

The Debtor will surrender the collateral for the Class 5 Secured Debt. Any deficiency on Pawnee Leasing Corporation's claim shall be treated as an unsecured, non-priority claim.

### Class 6: General Unsecured Claims.

General unsecured claims are not secured by property of the estate and are not entitled to priority under §507(a) of the Code. Class 6 claims consists of all pre-petition, unsecured, non-priority claims and includes the unsecured non-priority portion of any tax claim (if any), and the unsecured portion of any otherwise secured claims where the claim has been reduced to the current market value of the property in accordance with 11 U.S.C. § 506 or otherwise disallowed by order of the court. These otherwise secured creditors have a security interest in the same collateral that is junior to the valid and perfected senior lien of Klein Bank. To the extent the otherwise secured creditors perfected their liens after Klein Bank, their secured claims are impaired as described in paragraphs 6(A) and 6(B) below.

A. Kings Cash Group, LLC holds a $180,669.19 claim unsecured by any of Debtor's assets. Kings Cash Group, LLC's lien was perfected after Klein Bank's and Can Capital Asset Serving, Inc's liens but prior to the liens of

Debtor's other secured creditors by the filing of a financing statement with the Secretary of State of the State of Minnesota on May 25, 2017. All of the collateral that secures Kings Cash Group, LLC's claim is encumbered by the perfected liens of Klein Bank and Can Capital Asset Serving, Inc. Kings Cash Group, LLC has conceded as much by filing a proof of claim that does not claim a security interest in Debtor's assets. Therefore, this Amended Plan treats any secured claim of Kings Cash Group, LLC as unsecured in the amount of $180,669.19. Kings Cash Group, LLC's claim shall be treated as an unsecured, non-priority claim. Kings Cash Group, LLC's unsecured claim is $180,669.19 (Claim 5). This claim is impaired.

B. Forward Financing, LLC holds a $74,336.88 claim unsecured by any of Debtor's assets. Forward Financing, LLC's lien was perfected after Debtor's other secured creditors by the filing of a financing statement with the Secretary of State of the State of Minnesota on May 30, 2017. All of the collateral that secures Forward Financing, LLC's claim is encumbered by the perfected liens of Klein Bank and Can Capital Asset Serving, Inc. Forward Financing, LLC has conceded as much by filing a proof of claim that does not claim a security interest in Debtor's assets. Therefore, this Amended Plan treats any secured claim of Forward Financing, LLC as unsecured in the amount of $74,336.88. Forward Financing, LLC's claim shall be treated as an unsecured, non-priority claim. Forward Financing, LLC's unsecured claim is $74,336.88 (Claim 7). This claim is impaired.

The Class 6 General Unsecured Claims are estimated to be in the amount of $693,921.23. The estimated amount of the Class 6 General Unsecured Claims includes the allowed unsecured portion of the claims of Can Capital Asset Services, Inc. and Pawnee Leasing Corporation, the non-priority unsecured claim of Ms. Vesperman, as well as the claims of lessors resulting from the termination of leases. Class 6 General Unsecured Claims will receive total distributions equal to $203,556.00. Debtor shall make monthly distributions to unsecured creditors from the Debtor's operating revenue in monthly installments of $1,019.00 per month, for a term of 12 months, then $3,986.00 per month for a term of 48 months, with the first payment beginning the 20th day of the first month following the Effective Date of the Amended Plan.

The Debtor shall make total distributions to holders of Class 6 Unsecured Claims in the minimum amount of $203,556.00.

All distributions to holders of allowed Class 6 Claims shall made on a pro-rated basis such that the distribution to any one holder shall be proportionate to the ratio the holder's claim bears to the aggregate amount of allowed Class 6 Claims (individual distribution = amount of holder's allowed claim ÷ aggregate amount of allowed Class 6 Claims, multiplied by the total amount of the distribution).

12

The amount of distributions to holders of allowed Class 6 Claims shall be increased if during the term of the Amended Plan, the Debtor's operating revenue significantly exceeds the amounts projected resulting in disposable income.  In determining whether Debtor in fact has additional net disposable income, the Debtor may take into account any changes in its operating expenses.

The Amended Plan contemplates a return of approximately 29.3 % to holders of Class 6 Unsecured Claims.

### Class 7: Equity Holder's Unsecured Claim.

Equity interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor.  In a limited liability company ("LLC"), the equity interest holders are the members.

Class 7 consists of the claims of the equity security holder, Neil Riemer.  At present, and based upon filed and scheduled claims as of the date of this Amended Plan, Debtor estimates that the total amount of the claims in this class is approximately $903,929.00.

The claims of the equity security holder, Neil Riemer, shall be unconditionally waived as consideration for the retention of Neil Riemer's equity as described below. Debtor will pay 0.0 % of the allowed claim and interest of the equity security holder, with no interest.

### Class 8: Equity Holder's Membership Interest

Class 8 consists of the interest of the equity security holder, Neil Riemer.  The equity security holder of the Debtor will retain entirely his membership interests in the Debtor.  As consideration for retention of the membership interest, Neil Riemer has agreed to waive his claims so that general unsecured creditors will be paid a greater pro rata share of payment under Class 6.

## 7.    IMPAIRED AND UNIMPAIRED CLASSES

All classes are impaired.

## 8.    MEANS OF EXECUTION OF THE AMENDED PLAN

On the Effective Date, the Debtor shall be re-vested with title to all property of the bankruptcy estate.  The Debtor shall continue to conduct its business in the ordinary course.  All monthly distributions and payments made under the Amended Plan shall be

funded from the Debtor's business operating revenue.

The aggregate amount of distributions under the Amended Plan is approximately $71,732.00 for the first year, then approximately $86,600.00 per year for the remaining years of the Amended Plan.  The difference between the estimated amount of funds available and the amount of required distributions may be held by the Debtor as an operating reserve for not more than 12 months after the anniversary of the Effective Date, on an annual basis going forward, and if not used in the normal course of their business, shall be distributed as an additional distribution, prorated, to holders of Class 6 Unsecured Claims, and shall not reduce the amounts otherwise due and payable under the Amended Plan.

Notwithstanding any other provision in the Amended Plan, the Debtor reserves the right to pay claims in full prior to the conclusion of the Term of the Amended Plan and to seek a discharge upon payment in full of the Amended Plan obligations.

## 9.    MANAGEMENT FOLLOWING CONFIRMATION

Neil Riemer will continue to be the Manager of the Debtor following confirmation of the Amended Plan.  The Post-Confirmation Manager of the Debtor will receive compensation as follows: an annual salary of $110,000.  Neil Riemer can be contacted regarding the status of Amended Plan payments during the life of the Amended Plan at 4200 Minnetonka Blvd # 1, Minnetonka, MN; telephone: (612) 436-4700; email: neilriemer@yahoo.com.

## 10.    EXECUTORY CONTRACTS

The Amended Plan, in Article 6.1, lists all executory contracts and unexpired leases that the Debtor will assume under the Amended Plan.  Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any.  Article 6.1 also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Amended Plan within the deadline for objecting to the confirmation of the Amended Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in Exhibit 6.1 will be rejected under the Amended Plan.  Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Amended Plan within the deadline for objecting to the confirmation of the Amended Plan.

The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of a Lease or Contract is no later than thirty (30) days after the date of the order confirming this Amended Plan.  Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

## 11.    POTENTIAL TAX CONSEQUENCES OF THE AMENDED PLAN

The Debtor is not expected to suffer adverse tax consequences as a result of the Amended Plan. The Debtor is not qualified to advise creditors of the specific respective tax impact on each of them as a result of treatment provided in the Amended Plan and therefore makes no representation as to that. While the Debtor does not believe the Plan will have a tax impact on claim holders, each creditor is urged to consult with a tax advisor as to such matters.

## 12.    POST CONFIRMATION ADMINISTRATIVE MATTERS

Fees payable by the by Debtor under 28 U.S.C. § 1930 shall be paid in full on the Effective Date and thereafter and when due until the Chapter 11 case is closed, dismissed or converted.  After confirmation of the Amended Plan, the Debtor shall submit quarterly operating reports to the United States Trustee each quarter (or portion thereof) until this Chapter 11 case is closed, dismissed or converted.  These reports shall be in the format prescribed by the United States Trustee.

## 13.    CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Amended Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code.  These include the requirements that: the Amended Plan must be proposed in good faith; at least one impaired class of claims must accept the Amended Plan, without counting votes of insiders; the Amended Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a Chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Amended Plan; and the Amended Plan must be feasible. These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

### A. Who May Vote or Object

Any party in interest may object to the confirmation of the Amended Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Amended Plan.  A creditor or equity interest holder has a right to vote for or against the Amended Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Debtor believes that classes 1, 2, 3, 4, 5, 6,  and 7 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Amended Plan.

### 1. *What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Amended Plan.  Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest.  When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

The deadline for filing a proof of claim in this case was November 20, 2017.

### 2. *What Is an Impaired Claim or Impaired Equity Interest?*
As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Amended Plan.  As provided in § 1124 of the Code, a class is considered impaired if the Amended Plan alters the legal, equitable, or contractual rights of the members of that class.

### 3. *Who is **Not** Entitled to Vote*

The holders of the following five types of claims and equity interests are *not* entitled to vote:

• holders of claims and equity interests that have been disallowed by an order of the Court;

• holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

• holders of claims or equity interests in unimpaired classes;

• holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and

• holders of claims or equity interests in classes that do not receive or retain any value under the Amended Plan;

• administrative expenses.

*Even If You Are Not Entitled to Vote on the Amended Plan, You Have a Right to Object to the Confirmation of the Amended Plan and to the Adequacy of the Amended Disclosure Statement.*

### 4. *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Amended Plan in each capacity, and should cast one ballot for each claim.

## B. Votes Necessary to Confirm the Amended Plan

If impaired classes exist, the Court cannot confirm the Amended Plan unless (1) at least one impaired class of creditors has accepted the Amended Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Amended Plan, unless the Amended Plan is eligible to be confirmed by a "cram down" on non-accepting classes, as discussed later in Section B.2..

### 1. *Votes Necessary for a Class to Accept the Amended Plan*

A class of claims accepts the Amended Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Amended Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Amended Plan.

A class of equity interests accepts the Amended Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Amended Plan.

### 2. *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Amended Plan, the Court may

nonetheless confirm the Amended Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code. An Amended Plan that binds nonaccepting classes is commonly referred to as a "cram down" Amended Plan.  The Code allows the Amended Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Amended Plan.

You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.

## 14.   ALTERNATIVES TO THE AMENDED PLAN

The Debtor believes it has pursued every possible alternative to the proposed Amended Plan. Consequently, the Debtor believes that the only realistic alternative to confirmation of the Amended Plan is liquidation under Chapter 7.  The Debtor firmly believes that reorganization under Chapter 11 is preferable to liquidation under Chapter 7.

The Debtor believes that general unsecured creditors and priority claimants would receive no recovery on liquidation.  On the other hand, the Debtors anticipate one hundred percent recovery on account of secured, full recovery on priority tax claims, and, 29.3% on account of general unsecured claims under the Amended Plan.

All of the Debtor's assets are subject to secured claims under applicable law.  The Debtor believes that on a forced liquidation basis all of their secured assets are worth less than the debts owed to the secured creditors and that there would be no net recovery in excess of the debt that would be distributable to unsecured creditors.  Based on this assumption, there would be substantial deficiencies on the secured debt and no funds available to pay unsecured claims.

The following table sets forth the Debtor's liquidation analysis.

| Asset Description | Scheduled Value | Amount of Secured Claim | Estimated Liquidation Value | Net Available for Distribution |
|---|---|---|---|---|
| Cash on hand | $300 | $150,894.78 | $300 | $0 |
| Klein bank account ending 1194 | $13,774 | $150,894.78 | $13,774 | $0 |
| Security Deposit CLPF-Velo, LLC | $13,063 | $150,894.78 | $13,063 | $0 |

| | | | |
|---|---|---|---|
| Retail inventory - Clothing, aromatics & yoga related decor | $49,766 | $150,894.78 | $49,766 | $0 |
| Office furniture | $17,911 | $150,894.78 | $17,911 | $0 |
| Office fixtures - improvements | $1 | $150,894.78 | $1 | $0 |
| Signs | $292 | $1,584.62 | $292 | $0 |
| Office Equipment | $12,553 | $150,894.78 | $12,553 | $0 |
| Leasehold interest in 2014 Land Rover Sport | $1 | N/A | $0 | $0 |
| Future receivables under Teacher Training Agreements | $30,109 | $150,894.78 | $30,109 | $0 |
| Potential future 30 day receiveables under customer auto-payment agreement | $20,014.63 | $150,894.78 & $62,134.72 | $20,014.63 | $0 |
| **TOTAL** | **$157,784.63** | **$214,614.12** | **$157,784.63** | **$0** |

## 15.    FEASIBILITY AND PROJECTIONS

The Debtor believes that the Amended Plan is feasible and Exhibit C shows projections evidencing the feasibility of the Amended Plan.  These projections suggest that the Amended Plan is viable over the long term.  The feasibility of the Amended Plan depends, at least in part, upon Debtor's ability to continue to meet or exceed existing levels of income and maintain costs at or below projected levels.

## 16.    WAIVER AND RELEASE

Confirmation of the Amended Plan shall constitute a complete waiver and release of all claims of all creditors against the Debtor except as provided for in the Amended Plan, and to the extent authorized by 11 U.S.C. § 1141.  Confirmation of the Amended Plan will bind creditors to accept payments provided for in the Amended Plan, and will oblige the Debtor to make payments to creditors as provided for in the Amended Plan. Creditors holding judgments against the Debtor on account of or with to respect prepetition claims shall not take any action to enforce such judgments.

## 17.    EFFECT OF CONFIRMATION OF AMENDED PLAN

### A.     Discharge of Debtor

On the effective date of the Amended Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Amended Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor shall not be discharged of any debt (i) imposed by the Amended Plan, (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure, or (iii) of a kind specified in § 1141(d)(6)(B). After the effective date of the Amended Plan your claims against the Debtor will be limited to the debts described in clauses (i) through (iii) of the preceding sentence.

### B.     Modification of Amended Plan

The Debtor may modify the Amended Plan at any time before confirmation of the Amended Plan. However, the Court may require a new Amended Disclosure Statement and/or revoting on the Amended Plan.  The Debtor may also seek to modify the Amended Plan at any time after confirmation only if (1) the Amended Plan has not been substantially consummated *and* (2) the Court authorizes the proposed modifications after notice and a hearing.

### C.     Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Court shall designate in the Amended Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

## 18.    CONTINUING JURISDICTION OF THE COURT

The Court shall continue to have and assert jurisdiction over the Debtor, parties and parties-in-interest following confirmation in order to hear and determine claims objections, adversary proceedings, and any other matter that may be properly be brought before the court.

## 19.    CONCLUSION

Debtor believes that the acceptance of this Amended Plan is in the best interests of the Debtor, the estate, and all creditors herein.  The alternative would be a Chapter 7 liquidation in which the unsecured creditors would not receive a distribution of payment.

Debtor respectfully urges all creditors to vote in favor of the Amended Plan.

Respectfully submitted,

ATLAS LAW FIRM, LLC

Dated: February 8, 2018

By: /e/ Michael J. Sheridan
Michael J. Sheridan (#0388936)
Attorney for Debtor
7900 International Dr., Suite 300
Bloomington, MN 55425
(763) 229-7538

**The Yoga Center, LLC.**
**Debtor**

Dated: FEB 6, 2018

By: _____

Its _____

**EXHIBIT**

A

# STATEMENT OF OPERATIONS & CASH FLOW

(NOTE: ONLY INCLUDE information directly related to one business operation on each form)

Type of business  Teaching                    Business Name  The Yoga Center, LLC

**PART A - GROSS BUSINESS INCOME FOR PREVIOUS 12 MONTHS:**

1. Gross Income for 12 Months Prior to Filing                    $ 1,635,367

**PART B - ESTIMATED AVERAGE FUTURE GROSS MONTHLY INCOME:**

2. Gross Monthly Income:                    $ 144,713.00

**PART C - ESTIMATED AVERAGE FUTURE MONTHLY EXPENSES:**

|  |  |
|---|---|
| 3. Payroll (paid to others) | $ 70,231 |
| 4. Payroll Taxes | $ 4,771 |
| 5. Unemployment Taxes | $ 274 |
| 6. Worker's Compensation | $ 360 |
| 7. Employee Benefits (e.g., pension, medical, etc.) | $ 0 |
| 8. Other Taxes | $ 3,199 |
| 9. Inventory Purchases (including raw materials | $ 8,000 |
| 10. Purchase of Feed/Fertilizer/Seed/Spray | $ 0 |
| 11. Rent (Other than debtor's principal residence) | $ 31,388 |
| 12. Utilities | $ 2,739 |
| 13. Office Expenses and Supplies | $ 293 |
| 14. Repairs and Maintenance | $ 351 |
| 15. Vehicle Expenses | $ 1037 |
| 16. Travel and Entertainment | $ 818 |
| 17. Advertising and Promotion | $ 5,000 |
| 18. Equipment Rental and Leases | $ 923 |
| 19. Legal/Accounting/Other Professional Fees | $ 125 |
| 20. Insurance | $ 918 |
| 21. Payment to Be Made Directly by Debtor to Secured Creditors for Pre-Petition Business Debts (specify) | $ 0 |
| 22. Other (Licenses & Permits) | $ 49 |
| 23. Total Monthly Expenses (add items (3-22)) | $ 130,476 |

**PART D - ESTIMATED AVERAGE NET MONTHLY INCOME:**

24. Average Net Monthly Income
(subtract line 23 from line 2)                    $ 14,237

Net Monthly Income $ ‾14,237‾‾‾‾‾‾‾‾‾‾‾‾‾‾

Verification.  I, ‾Neil Reimer‾‾‾‾‾‾‾‾‾, the President of The Yoga Center, LLC , declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information and belief.

Executed on ‾July 13, 2017‾‾‾‾‾‾‾‾‾          Signed: ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

                                           Neil Reimer, President
                                           The Yoga Center, LLC
                                           103 N 2nd St
                                           Minneapolis, MN 55401

# THE YOGA CENTER OF MINNEAPOLIS

## BALANCE SHEET

As of June 30, 2017

|  | TOTAL |
|---|---|
| **ASSETS** | |
| Current Assets | |
| Bank Accounts | |
| Klein Bank Checking | 13,380.08 |
| **Total Bank Accounts** | **$13,380.08** |
| **Total Current Assets** | **$13,380.08** |
| Fixed Assets | |
| Accumulated Depreciation | -117,563.00 |
| Buildout 2013 | 16,983.17 |
| Furniture and Fixtures | 68,531.34 |
| Leasehold Improvement | 130,555.00 |
| Software | 13,171.87 |
| STLP Buildout | 75,965.14 |
| **Total Fixed Assets** | **$187,643.52** |
| Other Assets | |
| Goodwill | 625,427.00 |
| Loan Origination Fee | 140,626.00 |
| **Total Other Assets** | **$766,053.00** |
| **TOTAL ASSETS** | **$967,076.60** |
| **LIABILITIES AND EQUITY** | |
| Liabilities | |
| Current Liabilities | |
| Credit Cards | |
| American Express | 52,397.61 |
| Wells Fargo Visa | 30,756.14 |
| Wells Fargo Visa (Neil's) | 49,035.51 |
| **Total Credit Cards** | **$132,189.26** |
| Other Current Liabilities | |
| Gift Certificates Outstanding | 34,368.68 |
| Karma Yoga Fund Donations | 2,787.15 |
| Line of Credit - Klein | 150,000.00 |
| Sales Tax Payable | 328.20 |
| **Total Other Current Liabilities** | **$187,484.03** |
| **Total Current Liabilities** | **$319,673.29** |
| Long-Term Liabilities | |
| Forward Financing Loan | 81,492.74 |
| Shareholder Loan - Neil | 754,080.25 |
| Shareholder Loan - Neil Interest | 28,206.99 |
| Signature Bank loan | 148,461.00 |
| Unpaid Guaranteed | 70,000.00 |
| Web Bank Loan | 64,332.63 |
| **Total Long-Term Liabilities** | **$1,146,573.61** |

| | TOTAL |
|---|---|
| **Total Liabilities** | **$1,466,246.90** |
| Equity | |
| Partner One Equity | -229,373.77 |
| Partner One Draws | -30,695.02 |
| **Total Partner One Equity** | **-260,068.79** |
| Partner Two Equity | 512,569.84 |
| Retained Earnings | -747,748.82 |
| Net Income | -3,922.53 |
| **Total Equity** | **$ -499,170.30** |
| **TOTAL LIABILITIES AND EQUITY** | **$967,076.60** |



B 25C (Official Form 25C) (12/08)

# UNITED STATES BANKRUPTCY COURT

In re _The Yoga Center LLC_
Debtor

Case No. _17-42115_

Small Business Case under Chapter 11

## SMALL BUSINESS MONTHLY OPERATING REPORT

Month: _12/1/17 - 12/31/17_          Date filed: _____

Line of Business: _Yoga classes & school_     NAISC Code: _____

IN ACCORDANCE WITH TITLE 28, SECTION 1746, OF THE UNITED STATES CODE, I DECLARE UNDER PENALTY OF PERJURY THAT I HAVE EXAMINED THE FOLLOWING SMALL BUSINESS MONTHLY OPERATING REPORT AND THE ACCOMPANYING ATTACHMENTS AND, TO THE BEST OF MY KNOWLEDGE, THESE DOCUMENTS ARE TRUE, CORRECT AND COMPLETE.

RESPONSIBLE PARTY:

_____
Original Signature of Responsible Party

_Neil Riemer_
Printed Name of Responsible Party

**Questionnaire:** *(All questions to be answered on behalf of the debtor.)*

| | | Yes | No |
|---|---|---|---|
| 1. | IS THE BUSINESS STILL OPERATING? | ☒ | ☐ |
| 2. | HAVE YOU PAID ALL YOUR BILLS ON TIME THIS MONTH? | ☐ | ☒ |
| 3. | DID YOU PAY YOUR EMPLOYEES ON TIME? | ☒ | ☐ |
| 4. | HAVE YOU DEPOSITED ALL THE RECEIPTS FOR YOUR BUSINESS INTO THE DIP ACCOUNT THIS MONTH? | ☒ | ☐ |
| 5. | HAVE YOU FILED ALL OF YOUR TAX RETURNS AND PAID ALL OF YOUR TAXES THIS MONTH | ☒ | ☐ |
| 6. | HAVE YOU TIMELY FILED ALL OTHER REQUIRED GOVERNMENT FILINGS? | ☒ | ☐ |
| 7. | HAVE YOU PAID ALL OF YOUR INSURANCE PREMIUMS THIS MONTH? | ☒ | ☐ |
| 8. | DO YOU PLAN TO CONTINUE TO OPERATE THE BUSINESS NEXT MONTH? | ☒ | ☐ |
| 9. | ARE YOU CURRENT ON YOUR QUARTERLY FEE PAYMENT TO THE U.S. TRUSTEE? | ☒ | ☐ |
| 10. | HAVE YOU PAID ANYTHING TO YOUR ATTORNEY OR OTHER PROFESSIONALS THIS MONTH? | ☐ | ☒ |
| 11. | DID YOU HAVE ANY UNUSUAL OR SIGNIFICANT UNANTICIPATED EXPENSES THIS MONTH? | ☐ | ☒ |
| 12. | HAS THE BUSINESS SOLD ANY GOODS OR PROVIDED SERVICES OR TRANSFERRED ANY ASSETS TO ANY BUSINESS RELATED TO THE DIP IN ANY WAY? | ☐ | ☒ |
| 13. | DO YOU HAVE ANY BANK ACCOUNTS OPEN OTHER THAN THE DIP ACCOUNT? | ☐ | ☒ |

EXHIBIT

B

B 25C (Official Form 25C) (12/08)

14. HAVE YOU SOLD ANY ASSETS OTHER THAN INVENTORY THIS MONTH?    ☐  ☒

15. DID ANY INSURANCE COMPANY CANCEL YOUR POLICY THIS MONTH?    ☐  ☒

16. HAVE YOU BORROWED MONEY FROM ANYONE THIS MONTH?    ☐  ☒

17. HAS ANYONE MADE AN INVESTMENT IN YOUR BUSINESS THIS MONTH?    ☐  ☒

18. HAVE YOU PAID ANY BILLS YOU OWED BEFORE YOU FILED BANKRUPTCY?    ☐  ☒

## TAXES

DO YOU HAVE ANY PAST DUE TAX RETURNS OR PAST DUE POST-PETITION TAX    ☐  ☒
OBLIGATIONS?

IF YES, PLEASE PROVIDE A WRITTEN EXPLANATION INCLUDING WHEN SUCH RETURNS WILL
BE FILED, OR WHEN SUCH PAYMENTS WILL BE MADE AND THE SOURCE OF THE FUNDS FOR
THE PAYMENT.

*(Exhibit A)*

## INCOME

PLEASE SEPARATELY LIST ALL OF THE INCOME YOU RECEIVED FOR THE MONTH. THE LIST
SHOULD INCLUDE ALL INCOME FROM CASH AND CREDIT TRANSACTIONS. *(THE U.S. TRUSTEE
MAY WAIVE THIS REQUIREMENT.)*

TOTAL INCOME $ 90,247.14

### SUMMARY OF CASH ON HAND
Cash on Hand at Start of Month  150.00 + 8000.32    $ 8,150.32
Cash on Hand at End of Month  150.00 + 14193.81    $ 14,343.81

PLEASE PROVIDE THE TOTAL AMOUNT OF CASH CURRENTLY AVAILABLE TO YOU  **TOTAL**  $ 14,343.81

*(Exhibit B)*

## EXPENSES

PLEASE SEPARATELY LIST ALL EXPENSES PAID BY CASH OR BY CHECK FROM YOUR BANK
ACCOUNTS THIS MONTH. INCLUDE THE DATE PAID, WHO WAS PAID THE MONEY, THE
PURPOSE AND THE AMOUNT. *(THE U.S. TRUSTEE MAY WAIVE THIS REQUIREMENT.)*

TOTAL EXPENSES $ 83,873.65

*(Exhibit C)*

## CASH PROFIT

INCOME FOR THE MONTH *(TOTAL FROM EXHIBIT B)*    $ 90,247.14
EXPENSES FOR THE MONTH *(TOTAL FROM EXHIBIT C)*    $ 83,873.65

*(Subtract Line C from Line B)*  **CASH PROFIT FOR THE MONTH**  $ 6,373.49

B 25C (Official Form 25C) (12/08)

## UNPAID BILLS

PLEASE ATTACH A LIST OF ALL DEBTS (INCLUDING TAXES) WHICH YOU HAVE INCURRED
SINCE THE DATE YOU FILED BANKRUPTCY BUT HAVE NOT PAID.  THE LIST MUST INCLUDE
THE DATE THE DEBT WAS INCURRED, WHO IS OWED THE MONEY, THE PURPOSE OF THE
DEBT AND WHEN THE DEBT IS DUE. *(THE U.S. TRUSTEE MAY WAIVE THIS REQUIREMENT.)*

TOTAL PAYABLES $ *96,254.48*

*(Exhibit D)*

## MONEY OWED TO YOU

PLEASE ATTACH A LIST OF ALL AMOUNTS OWED TO YOU BY YOUR CUSTOMERS FOR WORK
YOU HAVE DONE OR THE MERCHANDISE YOU HAVE SOLD.  YOU SHOULD INCLUDE WHO
OWES YOU MONEY, HOW MUCH IS OWED AND WHEN IS PAYMENT DUE. *(THE U.S. TRUSTEE MAY
WAIVE THIS REQUIREMENT.)*

TOTAL RECEIVABLES $ 0

*(Exhibit E)*

## BANKING INFORMATION

PLEASE ATTACH A COPY OF YOUR LATEST BANK STATEMENT FOR EVERY ACCOUNT YOU
HAVE AS OF THE DATE OF THIS FINANCIAL REPORT OR HAD DURING THE PERIOD COVERED
BY THIS REPORT.

*(Exhibit F)*

## EMPLOYEES

NUMBER OF EMPLOYEES WHEN THE CASE WAS FILED?            52

NUMBER OF EMPLOYEES AS OF THE DATE OF THIS MONTHLY REPORT?   52

## PROFESSIONAL FEES

*BANKRUPTCY RELATED:*

PROFESSIONAL FEES RELATING TO THE BANKRUPTCY CASE PAID DURING THIS REPORTING
PERIOD?                                                   $ 0

TOTAL PROFESSIONAL FEES RELATING TO THE BANKRUPTCY CASE PAID SINCE THE FILING
OF THE CASE?                                              $ 0

*NON-BANKRUPTCY RELATED:*

PROFESSIONAL FEES NOT RELATING TO THE BANKRUPTCY CASE PAID DURING THIS
REPORTING PERIOD?                                         $ 0

TOTAL PROFESSIONAL FEES NOT RELATING TO THE BANKRUPTCY CASE PAID SINCE THE
FILING OF THE CASE?                                       $ 0



**THE YOGA CENTER OF MINNEAPOLIS**
Projections

| | Jan-Nov 2017 Actual | Dec 2017 projected | Total 2017 | Jan 2018 | Feb 2018 | March 2018 | April 2018 | May 2018 | June 2018 | July 2018 | Aug 2018 | Sept 2018 | Oct 2018 | Nov 2018 | Dec 2018 | Total 2018 | 2019 | 2020 | 2021 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | 1,444,189 | 77,362 | 1,521,551 | 130,000 | 120,000 | 120,000 | 120,000 | 120,000 | 110,000 | 110,000 | 110,000 | 130,000 | 120,000 | 120,000 | 130,000 | 1,440,000 | 1,483,200 | 1,527,696 | 1,573,527 |
| **Expenses:** | | | | | | | | | | | | | | | | | | | |
| Cost of Goods Sold | 42,869 | 350 | 43,219 | 2,500 | 10,000 | 2,500 | 2,500 | 10,000 | 2,500 | 2,500 | 10,000 | 2,500 | 10,000 | 2,500 | 2,500 | 60,000 | 60,000 | 60,000 | 60,000 |
| Credit card fees | 47,062 | 4,131 | 51,193 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 42,000 | 42,000 | 42,000 | 42,000 |
| Dues and Subscriptions | 1,124 | 2,125 | 3,249 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 | 1,200 | 1,200 | 1,200 |
| Depreciation expense | 18,150 | 1,650 | 19,800 | | | | | | | | | | | | | | | | |
| Equipment Rental | 8,166 | | 8,166 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 7,200 | 7,200 | 7,200 | 7,200 |
| Health Insurance Premiums | 957 | | 957 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 | 3,600 | 3,600 | 3,600 |
| Payroll/payroll taxes | 890,441 | 54,780 | 945,221 | 62,000 | 62,000 | 62,000 | 62,000 | 62,000 | 62,000 | 62,000 | 62,000 | 62,000 | 62,000 | 62,000 | 62,000 | 744,000 | 766,320 | 789,310 | 812,989 |
| Other payroll | 37,377 | 11,000 | 48,377 | 12,757 | 12,757 | 12,757 | 12,757 | 12,757 | 12,757 | 12,757 | 12,757 | 12,757 | 12,757 | 12,757 | 12,757 | 153,084 | 153,084 | 153,084 | 153,084 |
| Liability Insurance | 7,193 | 566 | 7,759 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 | 6,000 | 6,000 | 6,000 |
| Work Comp ins | 5,564 | 782 | 6,346 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 2,400 | 2,400 | 2,400 | 2,400 |
| Licenses and Permits | 414 | 740 | 1,154 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 | 3,600 | 3,600 | 3,600 |
| Marketing | 20,278 | 1,098 | 21,376 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 30,000 | 30,000 | 30,000 | 30,000 |
| Office Supplies | 5,188 | (82) | 5,106 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 900 | 900 | 900 | 900 |
| Payroll Processing Fees | 7,794 | 504 | 8,298 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 7,200 | 7,200 | 7,200 | 7,200 |
| Postage and Delivery | 568 | 63 | 631 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 600 | 600 | 600 | 600 |
| Professional fees | 13,744 | | 13,744 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 2,400 | 2,400 | 2,400 | 2,400 |
| Property Tax | 38,390 | | 38,390 | | | | | 19,200 | | | | | | 19,200 | | 38,400 | 38,400 | 38,400 | 38,400 |
| On the Road rent | 23,783 | | 23,783 | | | 1,000 | 1,000 | 1,000 | 1,000 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 12,000 | 12,000 | 12,000 | 12,000 |
| SLP rent monthly + quarterly | 94,744 | | 94,744 | 11,500 | 17,500 | 11,500 | 11,500 | 17,500 | 11,500 | 11,500 | 17,500 | 11,500 | 11,500 | 17,500 | 11,500 | 162,000 | 162,000 | 162,000 | 162,000 |
| MPLS rent | 79,498 | | 79,498 | | | | | | | | | | | | | | | | |
| Repairs | 726 | 526 | 1,252 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 600 | 600 | 600 | 600 |
| Sidewalk Maint | 1,378 | | 1,378 | 100 | 100 | 100 | 100 | | | | | | 100 | 100 | 100 | 600 | 600 | 600 | 600 |
| Supplies | 3,120 | 251 | 3,371 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 | 6,000 | 6,000 | 6,000 |
| Telephone/Security | 12,203 | 661 | 12,864 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 9,000 | 9,000 | 9,000 | 9,000 |
| Transportation/Lodging | 6,980 | | 6,980 | | | | | | | | | | | | | | | | |
| Utilities | 12,982 | 1,266 | 14,248 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 7,200 | 7,200 | 7,200 | 7,200 |
| Debt payments | 80,955 | 586 | 81,541 | | | | | | | | | | | | | | | | |
| a. Priority tax claims | | | | 200 | | | | | | | | | | | | 200 | | | |
| b. Attorney fees | | | | | 1,603 | 1,603 | 1,603 | 1,603 | 1,603 | 1,603 | 1,603 | 1,603 | 1,603 | 1,603 | | 16,025 | 3,205 | 0 | 0 |
| c. U.S. Trustee fees | | | | 1,500 | | | | 650 | | | 650 | | | 650 | | 3,450 | 2,600 | 2,600 | 2,600 |
| d. Class 1 priority wage claims | | | | | 716 | 716 | 716 | 716 | 716 | 716 | 716 | 716 | 716 | 716 | | 7,156 | 1,431 | 0 | 0 |
| e. Class 2 priority pre-payment claims | | | | | 752 | 752 | 752 | 752 | 752 | 752 | 752 | 752 | 752 | 752 | | 7,516 | 1,503 | 0 | 0 |
| f. Class 3 secured claim - Klein Bank | | | | 0 | 2,871 | 2,871 | 2,871 | 2,871 | 2,871 | 2,871 | 2,871 | 2,871 | 2,871 | | | 25,839 | 34,452 | 34,452 | 34,452 |
| g. Class 4 secured claim - Can Capital | | | | 0 | 143 | 143 | 143 | 143 | 143 | 143 | 143 | 143 | 143 | | | 1,287 | 1,716 | 1,716 | 1,716 |
| h. Class 5 secured claim - Pawnee | | | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | | 0 | 0 | 0 | 0 |
| i. Class 6 general unsecured claims | | | | 0 | 1,019 | 1,019 | 1,019 | 1,019 | 1,019 | 1,019 | 1,019 | 1,019 | 1,019 | | | 9,169 | 41,898 | 47,832 | 47,832 |
| j. Class 7 equity holder's unsecured claim | | | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | | 0 | 0 | 0 | 0 |
| i. Assumed leases prepetition default cure | | | | 0 | 272 | 272 | 272 | 273.53 | 0 | 0 | 0 | 0 | 0 | | | 1,089.53 | 0 | 0 | 0 |
| **Total Expenses** | 1,461,648 | 80,997 | 1,542,645 | 99,682 | 113,182 | 104,452 | 108,056 | 140,656 | 108,606 | 108,458 | 121,684 | 108,834 | 134,884 | 114,284 | 108,934 | 1,371,716 | 1,409,110 | 1,431,894 | 1,455,573 |
| **Net income(loss)** | (17,459) | (3,635) | (21,094) | 30,318 | 6,818 | 15,548 | 11,944 | (20,656) | 1,394 | 1,542 | (11,684) | 21,166 | (14,884) | 5,716 | 21,066 | 68,284 | 74,090 | 95,802 | 117,954 |